### COUNTY OF MIDDLESEX, OCTOBER TERM 1847, AT CAMBRIDGE.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY, } Justices.

---

## Allen Blood & wife vs. Abiel Hayman.

The *St.* of 1783, *c.* 36, § 17, which prescribed the form of the oath to be taken by an administrator, executor or guardian, who had obtained a legal order or license to sell real estate, did not, like *St.* 1817, *c.* 190, § 11, require that the oath should be taken before fixing the time of sale.

Though an administrator, who obtains license to sell his intestate's real estate, cannot lawfully be himself the purchaser, either directly or indirectly, and though, if he so becomes the purchaser, the heirs of the intestate may avoid the sale, yet the estate, so sold and purchased, passes to the grantee, by the administrator's conveyance thereof, subject to be defeated by the heirs; and if it is afterwards sold and conveyed, for a valuable and full consideration, to a *bona fide* purchaser, who had no notice that it had been bought, at the administrator's sale, for the administrator's benefit, such purchaser will hold it against the heirs of the intestate.

In a suit by heirs, to recover land of which their ancestor died seized, upon the alleged ground that the sale thereof by his administrator, under a license, was fraudulent and voidable, the surety of the administrator, on his administration bond and also on the bond given by him on his obtaining license to sell, is a competent witness.

This was a petition for partition of a parcel of land in Dunstable, of which, as the petition alleged, Rachel Blood

the female petitioner, was seized of one undivided moiety in fee, as tenant in common with the respondent.

At the trial, before *Wilde*, J. it appeared that, on the 7th of September 1807, Silas Blood conveyed to Silas Blood, jr. his son, the land in question, together with another parcel of land in Dunstable, of about one hundred and fifty acres; and that the said Silas Blood, jr. at the same time, by an instrument of the same date, in consideration of said deed, conveyed or leased the whole of said land to said Silas Blood, to hold the same during his life : That on the 7th of November 1807, said Silas Blood, jr. was married to Rebecca Lakin, by whom he afterwards had two children, viz. Rachel Blood, the female petitioner, and Silas W. Blood : That said Silas Blood, jr. died intestate, on the 5th of October 1815, leaving a widow and the two children above mentioned : That said Silas Blood, sen. died on the 6th of January 1844 : That Allen Blood and Rachel Blood (the petitioners) were lawfully married ; and that Silas W. Blood died before the death of Silas Blood, sen. having conveyed all his interest in the land now in question to the respondent.

The respondent, in defence, gave evidence that, on the 19th of October 1815, the said Silas Blood was duly appointed administrator of the estate of said Silas Blood, jr. and gave bond, as required by law, and on the 16th of January 1816, returned an inventory of the personal estate of his intestate, and also of his real estate, as follows : " The homestead farm of said deceased, situated in Dunstable, containing one hundred and fifty acres, more or less, subject to the incumbrance of a life lease, during the natural life of Silas Blood, father of the said Silas Blood, jr. deceased." The above estate was appraised at eleven hundred dollars.

The respondent then produced in evidence a copy of a petition of Silas Blood, as such administrator, for a license to sell real estate of his intestate, for the payment of debts, &c. presented to the circuit court of common pleas, held at Concord on the second Monday of March 1816, accompanied by a certificate of the judge of probate, stating the necessity of

such sale, and by a writing in which the widow and minor children of said intestate gave their consent to such sale. In this petition said Silas Blood alleged as follows : "The only real estate of said intestate, known to said administrator consists of a fee simple in remainder, expectant upon the death of said administrator, in about one hundred and fifty acres of land, being the homestead farm, so called, in Dunstable, whereon the said deceased last dwelt ; which remainder expectant, as aforesaid, by the inventory of said estate is appraised at eleven hundred dollars ; a partial sale whereof is impracticable."

The respondent also produced in evidence a copy of a license from said court of common pleas, at said term, to said Silas Blood, to sell and convey the whole of the real estate in said last mentioned petition described, for the reasons and purposes therein stated, upon his giving bond and taking the oath by law required, and in other respects observing the rules and directions of law, in such case made and provided : Also a copy of the bond, such as the law required, given by said administrator, and filed in the probate office, and a copy of the oath taken by him, in the form prescribed by *St.* 1783, c. 36, § 17, (which was admitted to be the only oath taken by him,) previously to selling said estate under said license. It appeared that this oath was taken before said administrator made sale of said estate, but not before he had fixed on the time of sale. The respondent objected, that the oath was not taken according to law, but the judge overruled the objection.

The respondent then produced in evidence a copy of said administrator's affidavit, duly filed in the probate office, from which it appeared that he gave notice of the sale of said estate, according to law : Also a deed from said Silas Blood, as such administrator, to George Johnson, dated April 5th 1817, reciting said license, and a sale at auction, on the 29th of April 1816, to said Johnson, of the real estate of said deceased, embracing the land in question, and conveying to said Johnson the fee simple in immediate remainder therein expectant upon the death of said administrator : Also a quitclaim deed thereof

20 *

from said Johnson to said Silas Blood, dated April 5th 1817 ; Also a deed from said Silas Blood to Rebecca Blood, dated June 10th 1819, conveying to her the land in question : Also a deed from said Rebecca Blood to Silas W. Blood, dated June 10th 1819, conveying said land to him : And also a deed from said Silas W. Blood to said Hayman, the respondent, dated June 27th 1837, conveying to him the same land.

The petitioners insisted that they were not divested of their estate in the land in question by reason of the said administrator's deed to said Johnson.     1st. Because the administrator never obtained a license to sell said land ; the license granted not including it.     2d. Because said administrator, who acted as auctioneer at the sale of the land, procured and employed the said Johnson, as his agent, to bid off the land for said administrator, and for his benefit ; and that said Johnson did so bid off the same ; whereby the said administrator was in fact the purchaser.

On the first point, the judge ruled, that the petition and license, taken in connexion with the inventory, gave authority, *prima facie,* to the administrator to sell the land in question.

On the second point, the judge ruled, that if said Johnson were so employed, as such agent, and did so bid off said land, and said Blood did so become the purchaser thereof, yet that these facts were immaterial, as the petitioners, being heirs at law of said Silas Blood, jr. deceased, could not avoid said sale against the respondent, if he were a *bona fide* purchaser for a valuable and full consideration.     And the judge left it to the jury to find the facts stated on the second point, and also whether the respondent was a *bona fide* purchaser for a valuable and full consideration.     The jury found the facts, as stated on the second point, and also that the respondent was a *bona fide* purchaser for a valuable and full consideration.

In the course of the trial, Micah Eldridge was called as a witness, by the respondent, to prove that the land in question was embraced in the inventory.     It was admitted that he was surety for said Blood, on his administration bond, and on the

bond given by him, on obtaining license to sell said rea. estate. The petitioners objected that he was not a competent witness; but he was admitted, and testified.

The jury returned a general verdict for the respondent. Judgment to be entered on the verdict, if the rulings at the trial were all correct; otherwise, a new trial to be granted.

This case was argued and decided at a former term.

*Mellen & B. Russell,* for the petitioners.

*Farley,* for the respondent.

SHAW, C. J. Petition for partition, in which the responuent denies the petitioners' title. After a verdict for the respondent, the case comes before the court on two questions reserved at the trial.

1. The first point relied upon, to show that the administrator, Silas Blood, sen. as administrator on the estate of Silas Blood, jr. the intestate, did not comply with the rules of law, and that nothing passed under his deed, is, that he did not take the oath required by law, before fixing on the time and place of sale. but only before the sale was actually made. It is to be considered that the sale was made before the passing of *St.* 1817, *c.* 190, which provided in terms, § 11, that the oath should be taken " previous to fixing upon the time and place of the sale; " but the sale, in the present case, must be governed by the preceding law. *St.* 1783, *c.* 36, § 17. The argument against the validity of the sale is founded on a supposed implication from the form of the oath. The administrator was required, by that act, to make oath in this form: " That in disposing of the estate," &c. " I will use my best skill and judgment in fixing on the time and place of sale, and that I will exert my utmost endeavors," &c. This clause is preceded by a preamble, reciting that " it sometimes happens that for want of prudent management in executors, administrators, guardians, &c. who are empowered to sell real estates, such estates are disposed of below their true value, to the great injury of heirs and creditors." The supposed implication is, that as the oath looks to the future, in regard to fixing the time and place of sale, it must be taken previously to any

and all the acts incident to the sale. This implication would be stronger, had not the same section of the statute required, in terms, that this oath should be taken " previous to the sale." But the expression of a time within which it shall be made, controls the implication arising from a mere *formula* adapted to general use ; and therefore the court are of opinion, that as the law then stood, the taking of the oath, prior to fixing on a time and place of sale, and of giving notice thereof, was not a condition precedent to the valid execution of the power.

2. The next question is this : Supposing that Blood, when he made sale of the estate of his son, under a license of court, made the purchase himself, under color of a sale to Johnson, or, what is equivalent, engaged Johnson to purchase it on his account, and if such sale was fraudulent and void as against the heirs, can they now recover it against Hayman, if he was a *bona fide* purchaser for a valuable consideration, without notice of the fraud ?

We are strongly inclined to think, that within the meaning of the well known rule, that a trustee to sell cannot be a purchaser, an administrator selling under a license is such a trustee, and cannot himself directly or indirectly be the purchaser. But it is so held, 'for the benefit and security of the parties interested. The license is pursued ; it is a good execution of the power ; and the purchaser has a good right to hold against the grantor and all the world, except those beneficially entitled to the proceeds, and interested to have a sale made at the best price, and on the best terms. In their favor, and at their election, the law will avoid such sale, not because it is in fact fraudulent, but because the administrator is the only party who can and who should act for them ; and he has so many means of disparaging the sale, if he has an adverse interest to subserve, and in modes which could not be detected, that the law will not subject him to the temptation of doing so, nor will it permit him to defend himself, by showing that the estate brought as good a price as could have been obtained for it from any other person. It would be

substituting after opinions of value in the place of the test of a free, actual competition of purchasers. It is therefore a sale voidable, and not void. *Jenison* v. *Hapgood,* 7 Pick. 1, and 10 Pick. 77. *Harrington* v. *Brown,* 5 Pick. 519. *Litchfield* v. *Cudworth,* 15 Pick. 23. Being voidable only, an estate passed, by the conveyance, to the grantee, subject to be defeated by the heirs. But it appears, in the present case, that long after this voidable sale to Johnson, the estate passed, by various mesne conveyances, to the respondent. It was then left as a fact to the jury to consider whether the respondent took the estate for a valuable and full consideration, and without notice of the fact that it had been purchased in, at the administrator's sale, for the administrator himself; and the jury found that he did.

The court are of opinion, therefore, that the respondent acquired a good title, by such conveyance, though it might have been avoided by a suit against the first grantee, or one taking under him, with notice of the defect. *Somes* v. *Brewer,* 2 Pick. 184. 4 Kent Com. (5th ed.) 464.

A point was made at the trial, on the objection of the petitioners to the competency of Micah Eldridge as a witness for the respondent, on the ground that he was a surety on the administrator's bonds. We cannot perceive, without some further fact connecting him with the parties in this suit, how he was interested in the result of this action, or how the judgment in this suit can subject him to a suit, or exempt him from one, on his bonds.

*Judgment on the verdict for the respondent.*